**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **CECIL ALLEN RUSTY CADENHEAD,** | § | |
| **#02399656** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.  4:22cv596** |
| | § | |
| **COLLIN CNTY. DETENTION** | § | |
| **FACILITY, ET AL.** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court are Defendant Collin County Detention Facility's (the "Detention Facility") Motion to Dismiss (the "Detention Facility's Motion") (Dkt. #22) and Defendants Sheriff Skinner, Officer Atkins, and Officer Cole's (together, the "Sheriff's Office Defendants," and together with the Detention Facility, "Defendants") Motion to Dismiss and Brief (the "Sheriff's Office Defendants' Motion," together with the Detention Facility's Motion, "the Motions") (Dkt. #23). To date, Plaintiff Cecil Allen Rusty Cadenhead ("Plaintiff") has not filed a response. For the reasons that follow, the Court recommends the Motions (Dkt. ##22, 23) be **GRANTED** and Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE.**

## I.    BACKGROUND

On July 14, 2022, Plaintiff, proceeding *pro se* and *in forma pauperis*, filed this lawsuit against Defendants. (Dkt. #1). Plaintiff is currently housed in the Dallas Transitional Center (Dkt. #19) but at all times relevant to his claims, he was confined at the Detention Facility. During his tenure at the Detention Facility, Plaintiff alleges that he was kept "confined to a cell for an extended amount of time, unjustly."  (Dkt. #1, p. 3). With respect to Officer Atkins, Plaintiff alleges the following:

> While housed in Pod 4A of CCDF (Collin County Detention Facility) 10-13-21 I submitted a grievance on Officer Atkins, who told the other inmates I did that. I was called a snitch by the other inmates, as well as threatened by them. I was placed on keep away from all status. I believe Officer Atkins also told the other inmates what my charge was. I was unjustly locked down for approximately two week[s] getting only one hour out of my cell every 26 or 29 hours. Being humiliated as well as threatened every day, until I was moved to cluster five.

(Dkt. #1-1, p. 1, ¶ 1). Plaintiff also alleges that, on March 3, 2022, "Officer Cole gave me two back to back 23 hour lockdowns as well as a disciplinary S.H.U. (special housing unit) case (which I did not have to serve) unjustly, for asking the med nurse a question." (Dkt. #1-1, p. 1, ¶ 2). Plaintiff further alleges that Sheriff Skinner "did not/does not have staff pay attention to lockdown time." (Dkt. #1, p. 3). Specifically, Plaintiff alleges the following:

> Six times I was confined to a cell for extended amount of time, violating my 8th Amendment, unjustly denying [privileges] (such as: phone, shower, outside recreation). Various other violations, (see enclosed documentation and grievance with response), of my constitutional rights.

(Dkt. #1, p. 4).[1] Plaintiff requests the following relief: "Restitution in the amount of 600,000 dollars." (Dkt. #1, p. 4).

Plaintiff attached a grievance and a response to his grievance. (Dkt. #1-1, pp. 4-5). Plaintiff's grievance states:

> My 8th Amendment, to be treated fairly and humanely/privilege to not be confined to a cell for more than 23 straight hours. 6 times total. 3 times while housed in 3B-44-01, while on "rotation." 3-2-22 at 10:00 pm until 3-3-22 at 11:15 pm in 4C by Officer Cole, for me asking the med nurse a question. 5-18-22 at 10:00 pm until 5-20-22 at 10:40 am in 4C. 6-19-22 at 10:00 pm until 6-21-22 at approximately 9:30 am, in 4C. Several times I brought this issue up to pod officers, all of whom completely [disregarded] me, [dismissing] me. None of these times was I offered nor allowed any time out of my cell. . . .

---

[1] Attached to Plaintiff's Complaint is a laundry list of additional complaints about his bail, the trial court judge, his lawyer, the unsanitary condition of his cell, lack of cleaning products, housing assignments, being placed on suicide watch, the use of "high intensity/lumen flashlights" by the guards, contracting Covid, "pod officers abusing power [and] making false reports," not receiving medication when he was sick, and "unjust medical charges." (Dkt. #1-1, pp. 2-3). Plaintiff does not offer any details about the circumstances surrounding any of these alleged additional violations, and he does not indicate that any of the named Defendants are involved. The additional complaints do not appear related to the claims Plaintiff is asserting in his Complaint. Thus, Plaintiff's allegations in the attachment (Dkt. #1-1, pp. 2-3) will not be considered in this Report and Recommendation.

(Dkt. #1-1, 5). The Complaint Reply Form includes the following response:

> I have researched your complaint. You were in Pod 3B from 11.12.21 until 11.22.2021. No lockdowns for disciplinary infractions were listed for that time period. In Pod 4C, no lock downs were listed for [disciplinary] infractions for any of the time periods you are referencing. In November of 2021, if the Pod was placed on a Covid protocol you would have been allowed 1 hour out a day. I find your complaint unfounded.

(Dkt. #1-1, p. 4).

On September 28, 2022, the Detention Facility moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. #22), arguing that it is a non-jural entity and cannot be sued. The Sheriff's Office Defendants also moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6). (Dkt. #23). The Sheriff's Office Defendants argue that Plaintiff's claims should be dismissed because: the Prison Litigation Reform Act ("PLRA") bars Plaintiff's claims; Plaintiff's Complaint fails to state a claim for relief; and the Sheriff's Office Defendants are entitled to qualified immunity. (Dkt. #23, pp. 4-8). In addition, Sheriff Skinner argues that no plausible allegations exist as to his direct or personal involvement and he cannot be held vicariously liable for his subordinates' actions, and any claim against him in his official capacity fails because Plaintiff identifies no constitutionally deficient policy, practice, or custom of Collin County, Texas. (Dkt. #23, pp. 9-13).

On October 5, 2022, the Court ordered that Plaintiff file a response, if any, to the Motions. (Dkt. #26). To date, Plaintiff has not filed a response.[2]

---

[2] Almost eight months have elapsed since the Motions (Dkt. ##23, 23) were filed, and Plaintiff has not filed responsive briefing. A failure to respond to a motion to dismiss creates the presumption that Plaintiff has no facts to controvert the motion. *See* Local Rule CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.").

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the Court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the Court's review is limited to the complaint, any document attached to the complaint, any document attached to the motion to dismiss that is central to the claim and referenced by the complaint, and any facts subject to judicial notice. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

The Court is also mindful that it "must construe the pleadings of *pro se* litigants liberally to prevent the loss of rights due to inartful expression." *Perez v. Dall. Cnty. Jail*, No. 3:20-cv-

01761, 2022 WL 1215781, at *2 (N.D. Tex. Mar. 31, 2022) (internal citations omitted); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). "But 'liberal construction does not require that the Court . . . create causes of action where there are none.'" *Rolan v. LaSalle Sw. Corr.*, No. 3:20-cv-2842, 2021 WL 5568168, at *3 (N.D. Tex. Nov. 1, 2021) (quoting *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013)).

## III.  ANALYSIS

### A.    <u>The Detention Facility's Motion</u>

Liberally construing Plaintiff's Complaint, Plaintiff asserts the Detention Facility violated his constitutional rights by "keeping [him] confined to a cell for an extended amount of time, unjustly." (Dkt. #1, pp. 3, 4). The Detention Facility argues that it is a non-jural entity and cannot be sued. (Dkt. #22). The Court agrees.

"A plaintiff may not bring a claim against a governmental agency or department unless it enjoys a separate and distinct legal existence." *McGrew v. City of Wichita Falls*, No. 3:14-cv-679, 2015 WL 3528236, at *6 (N.D. Tex. June 4, 2015) (citing *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991)). "State agencies that may sue and be sued are known as jural entities; non-jural entities are not subject to suit." *Id.* (citing *Darby*, 939 F.2d at 313-14). The capacity of a county or city department to be sued is determined by the state where the district court is located. *See Darby*, 939 F.2d at 313; *see also* Fed. R. Civ. P. 17(b)(3).

Because this Court sits in Texas, it must apply Texas law to determine whether the Detention Facility can be sued. *See Darby*, 939 F.2d at 313. This Court has repeatedly found that the Detention Facility is a non-jural entity. *See, e.g.*, *Price v. Collin Cnty. Det. Facility*, No. 4:21-CV-729-SDJ-KPJ, 2022 WL 4480320, at *4 (E.D. Tex. Sept. 1, 2022), *report and recommendation adopted*, No. 4:21-CV-729-SDJ-KPJ, 2022 WL 4474903 (E.D. Tex. Sept. 26, 2022); *Crawford v.*

*Collin Cnty. Det. Facility*, No. 4:20-CV-668-RAS-CAN, 2022 WL 4459855, at *2 (E.D. Tex. Aug. 18, 2022), *report and recommendation adopted*, No. 4:20-CV-668, 2022 WL 4449315 (E.D. Tex. Sept. 22, 2022); *Marr v. Collin Cnty. Det. Ctr.*, No. 4:20-CV-273-RAS-KPJ, 2021 WL 4166945, at *3 (E.D. Tex. July 19, 2021) (collecting cases) ("As this Court has repeatedly held, the [Collin County] Detention Center is a non-jural entity."), *report and recommendation adopted*, No. 4:20-CV-273-RAS-KPJ, 2021 WL 4148954 (E.D. Tex. Sept. 11, 2021); *Newman v. Collin Cnty. Det. Facility*, No. 4:10-cv-463, Dkt. #37 (E.D. Tex. Feb. 7, 2011), *report and recommendation adopted*, Dkt. #39 (E.D. Tex. Mar. 3, 2011), *appeal dismissed*, Dkt. #52 (5th Cir. Aug. 17, 2011); *Propes v. Plano Police Dep't*, No. CIV.A.4:03 CV 87, 2005 WL 1177880, at *4 (E.D. Tex. May 18, 2005).[3] The Complaint (Dkt. #1) contains no allegation that Collin County, Texas has taken explicit steps to grant the Detention Facility with jural authority. *See Darby*, 939 F.2d at 313-14; *see also Charboneau v. Davis*, No. 4:13-cv-678, 2017 WL 9250306, at *6 (E.D. Tex. Feb. 16, 2017). Thus, even if the Court takes all of Plaintiff's allegations against the Detention Facility as true, Plaintiff has failed to state a claim upon which relief can be granted. *See id.*

Furthermore, because Collin County has not granted the Detention Facility with jural authority, it would be futile to grant Plaintiff an opportunity to replead with respect to the Detention Facility. Accordingly, because the Detention Facility has no separate jural existence and is not a suable entity, the Court recommends that the Detention Facility's Motion (Dkt. #22) be granted and that Plaintiff's claims against the Detention Facility be dismissed with prejudice.

---

[3] The Detention Facility's Motion cites more than fifteen opinions issued by the Eastern District of Texas for this well-established proposition. (*See* Dkt. #22, pp. 5-6) (citing cases).

**B.  The Sheriff's Office Defendants' Motion**

   **1.  The PLRA**

The Sheriff's Office Defendants contend the PLRA[4] bars Plaintiff's claims for two reasons: (1) Plaintiff failed to exhaust his administrative remedies; and (2) Plaintiff failed to allege a physical injury. (Dkt. #23, pp. 5-6).

   *a.  Exhaustion*

The Sheriff's Office Defendants contend Plaintiff has failed to satisfy the PLRA's requirement that prisoners exhaust administrative remedies prior to filing suit. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "Exhaustion is an affirmative defense, and the defendants have the burden of proving that the plaintiff failed to exhaust available administrative remedies." *Prescott v. Plybol*, 855 F. App'x 952, 953 (5th Cir. 2021) (per curiam). "Exhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them." *Id.* (quoting *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015)).

Plaintiff attached grievance forms to his Complaint and affirmatively indicates in his Complaint that he satisfied the PLRA's exhaustion requirement prior to filing suit. (*See* Dkt. #1, p. 3; Dkt. #1-1). Although the Sheriff's Office Defendants assert that Plaintiff failed to file grievance appeals, the Sheriff's Office Defendants have submitted no evidence to this Court regarding the Detention Facility's grievance procedures. *See Prescott*, 855 F. App'x at 954. As in *Prescott*, the Court cannot discern from the record the grievance procedures employed by the

---

[4] For PLRA purposes, pretrial detainees are considered prisoners. *See* 42 U.S.C. § 1997e(h); *Pomier v. Leonard*, 532 F. App'x 553 (5th Cir. 2013).

Detention Facility during the span of time that Plaintiff was incarcerated there and the events giving rise to his claims occurred. *See id.* at 953. The Sheriff's Office Defendants never introduced the procedures as evidence. Additionally, the Sheriff's Office Defendants put forth no evidence showing that the applicable procedures were explained to Plaintiff or that he was aware of them. *See id.* at 954. Thus, "[w]ithout knowing what the applicable grievance procedures say, it's impossible to determine whether [Plaintiff] exhausted them." *Id.* (quoting *Cantwell*, 788 F.3d at 509). Accordingly, the Court recommends finding that the Sheriff's Office Defendants failed to meet their burden to establish there were available administrative procedures that Plaintiff failed to exhaust prior to filing suit.

### b. Physical Injury

Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Thus, absent a physical injury, a plaintiff cannot recover compensatory damages. *See Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) (holding that "[s]ection 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury"). In their Motion, the Sheriff's Office Defendants argue Plaintiff has failed to state a claim for relief as he has not asserted any physical injury. (Dkt. #23, p. 6). The Court agrees.

In his Complaint, Plaintiff asserts that he is seeking monetary damages. (Dkt. #1, p. 4 ("Restitution in the amount of 600,000 dollars."). Plaintiff does not, however, allege that he suffered any physical injury due to being "confined to a cell" or "locked down" for an "extended amount of time," being placed on "keep away from all status," or being "unjustly den[ied]

[privileges] (such as: phone, shower, outside recreation)." Under the PLRA, Plaintiff's failure to allege a physical injury in connection with his constitutional claims justifies dismissal of his claims. *See Higgins v. Navarrete et al.*, 2022 WL 543018, at \*3 (5th Cir. Feb. 23, 2022) (affirming district court's grant of summary judgment on the basis that the plaintiff failed to allege a physical injury, as required under the PLRA, for monetary damages claim); *see also Geiger*, 404 F.3d at 374 (affirming the dismissal of a First Amendment claim because the plaintiff alleged only mental anguish, emotional distress, psychological harm, and insomnia as his injuries).

### 2.  42 U.S.C. § 1983

Even if the PLRA does not bar Plaintiff's claims against the Sheriff's Office Defendants due to Plaintiff's failure to allege a physical injury, the Court agrees with the Sheriff's Office Defendants that Plaintiff's Section 1983 claims do not pass muster under Rule 12(b)(6). The Court explains below.

"Section 1983 is not a general tort remedy available to 'all who suffer injury at the hands of the state or its officers.'" *Waddleton v. Rodriguez*, 750 F. App'x 248, 252 (5th Cir. 2018) (per curiam) (quoting *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981)). To state a claim under Section 1983, "'a plaintiff must allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States.'" *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 241 (5th Cir. 2021) (per curiam) (quoting *Bryant v. Mil. Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010)).

#### a.  *Plaintiff's Claims Against Sheriff Skinner*

The Sheriff's Office Defendants argue the claims against Sheriff Skinner should be dismissed. (Dkt. #23, pp. 9-13). Plaintiff alleges in the Complaint that Sheriff Skinner "did

not/does not have staff pay attention to lockdown time." (Dkt. #1, p. 3). Plaintiff does not otherwise specify whether he is suing Sheriff Skinner in his individual or official capacity. Regardless of the type of claim asserted, the Court recommends finding that Plaintiff has failed to state a claim for relief against Sheriff Skinner.

To the extent Plaintiff seeks to recover against Sheriff Skinner in his official capacity, Plaintiff's claim is subject to dismissal. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Ky. v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Thus, any Section 1983 action against Sheriff Skinner in his official capacity is, in effect, a claim against Collin County. *See Bone v. Skinner*, No. 4:21-CV-201, 2022 WL 912100, at *7 (E.D. Tex. Feb. 24, 2022), ("Plaintiff's § 1983 action against Sheriff [Skinner] in [his] official capacity is, in effect, a claim against [Collin] County.") (citations omitted) (alterations in original), *report and recommendation adopted*, No. 4:21-CV-201, 2022 WL 906191 (E.D. Tex. Mar. 27, 2022). A judgment against a public servant in his official capacity imposes liability on the entity that he represents, *see Marceaux v. Lafayette City-Par. Consol. Gov't*, 921 F. Supp. 2d 605, 623 (W.D. La. 2013); thus, a plaintiff's suit against a government official in his official capacity is "only another way of pleading an action against an entity of which [the official] is an agent." *Monell*, 436 U.S. at 690 n.55; *see also Gage v. Valdez*, No. 3:16-CV-1360-B-BH, 2017 WL 4465765, at *3 (N.D. Tex. Aug. 21, 2017) ("Plaintiff's suit against the Sheriff in her official capacity is merely another way of pleading an action against her municipal employer, i.e., Dallas County."), *report and recommendation adopted*, No. 3:16-CV-1360-B-BH, 2017 WL 4419041 (N.D. Tex. Oct. 4, 2017); *Sutherland v. Akin*, No. 4:19-CV-216-O, 2021 WL 462103, at *8 (N.D. Tex. Feb. 9, 2021) ("Sutherland's claims against the defendants [including a sheriff and county

jail officers, among others,] in their official capacities as employees of the Wise or Tarrant County Jails are construed as claims against Wise County and Tarrant County.").

Under *Monell*, "municipalities may be sued under § 1983 but cannot be held liable for acts of their employees under a theory of *respondeat superior*." *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021). Rather, to state a claim against a municipality under *Monell* and its progeny, a plaintiff must plead that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Id.* (quoting *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017); *see also Doe v. Harris Cnty.*, No. 21-20251, 2022 WL 220114, at *5 (5th Cir. Jan. 24, 2022) (per curiam) (applying the rule to claims asserted against a county entity). A policy constitutes the "moving force" behind an alleged violation if there is "'a direct causal link' between the policy and the violation." *Covington v. City of Madisonville, Tex.*, 812 F. App'x 219, 225 (5th Cir. 2020) (per curiam) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)). Additionally, "[t]he official policy itself must be unconstitutional or, if not, must have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.'" *James*, 577 F.3d at 617 (quoting *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)).

An "official policy" under *Monell* can take different forms: it can be either an official written policy or a "widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Gomez*, 18 F.4th at 777 (quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018)). A plaintiff who does not allege an official written policy faces a high bar to prove an official custom:

> Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the

governing body that the objectionable conduct is the expected, accepted practice of city employees. *It is thus clear that a plaintiff must demonstrate a pattern of abuses* that transcends the error made in a single case. A pattern requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question. *A pattern also requires sufficiently numerous prior incidents, as opposed to isolated instances*.

*Peña Arita*, 470 F. Supp. 3d at 706 (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009)) (emphasis added). "[I]solated violations are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." *Gates v. Tex. Dep't of Protective and Regul. Servs.*, 537 F.3d 404, 437 (5th Cir. 2008) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995)). This is true even at the pleading stage. *See, e.g.*, *Feliz v. El Paso Cnty.*, 441 F. Supp. 3d 488, 503 (W.D. Tex. 2020) ("[A] plausible [municipal liability] claim requires more than a recitation of the incident in which the plaintiff was personally involved."); *Rodriguez v. S. Health Partners, Inc.*, No. 3:20-cv-45, 2020 WL 7056336, at *9 (N.D. Tex. Dec. 2, 2020) (finding the plaintiff "failed to allege facts sufficient to permit the court to infer the existence of an official custom" because she "has not alleged, other than in conclusory terms, another instance" of a violation similar to that which she experienced).

Review of the Complaint shows that Plaintiff fails to identify any policy or practice of Collin County related to his specific allegations or to the policies at the Detention Facility generally. Plaintiff has thus failed to allege there was an official policy promulgated by Collin County that was the moving force behind the alleged violations of the Constitution, and thus any official capacity claim against Sheriff Skinner should be dismissed. *See Bone*, No. 4:21-CV-201, 2022 WL 912100, at *8 (noting there is a "wholesale absence of any allegations against the County concerning its policies, practices or customs regarding providing medical care to pretrial detainees"); *Melton v. Hunt Cnty.*, No. 3:14-CV-2202-N, 2019 WL 5067907, at *3 (N.D. Tex. Oct.

8, 2019) ("Melton's pleading consists of only conclusory allegations. Melton does not establish that Hunt County's failure to train was the 'moving force' behind the constitutional violation nor does Melton allege any facts that show that Hunt County or Sheriff Meeks acted with deliberate indifference."); *see also Jenkins v. LaSalle Sw. Corr.*, No. 3:17-CV-1376-M-BN, 2020 WL 2106355, at *3 (N.D. Tex. Jan. 28, 2020) ("Plaintiff fails to allege that his rights were violated under an official policy of either LaSalle or Johnson County, he has not alleged a plausible claim against the defendants or their policymakers."), *report and recommendation adopted*, No. 3:17-CV-1376-M, 2020 WL 2105842 (N.D. Tex. Apr. 30, 2020); *Stiff v. Stinson*, No. 3:12-CV-4998-D, 2013 WL 3242468, at *4 (N.D. Tex. June 27, 2013) (finding the plaintiff's "official capacity claims against the Sheriff and the Officer should be dismissed" where the plaintiff failed to allege an official policy or custom of the county).

To the extent Plaintiff seeks to extend supervisory liability to Sheriff Skinner in his individual capacity, such a claim also fails. Section 1983 does not create supervisory or *respondeat superior* liability. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates."); *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011). Under Fifth Circuit jurisprudence, a supervisory official may only be held liable if one of the following exists: (1) personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018); *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). "These two conditions are consistent with the Supreme Court's holding that mere knowledge or acquiescence is insufficient to create supervisory liability in the § 1983 setting." *O'Shea v. Parkey*, No. 4:12-cv-265, 2014 WL 494905, at *3 (E.D. Tex. Feb. 4, 2014) (citing *Iqbal*, 556 U.S. at 677).

Plaintiff alleges in the Complaint that Sheriff Skinner "did not/does not have staff pay attention to lockdown time." (Dkt. #1, p. 3). Plaintiff makes only conclusory assertions that Sheriff Skinner is liable for the alleged conduct of his subordinates at the Detention Facility. Moreover, Plaintiff does not allege any personal involvement by Sheriff Skinner in the purported constitutional violations. Nor does Plaintiff establish a sufficient causal connection between Sheriff Skinner and the alleged constitutional violations. And to the extent Plaintiff contends Sheriff Skinner is liable because he ignored his subordinates' alleged constitutional violations, the claim fails of its own conclusory weight, being unsupported by any allegation of facts that would show Sheriff Skinner was ever aware of any such alleged violation. *See Iqbal*, 556 U.S. at 678-79; *Mackey v. Helfrich*, 442 F. App'x 948, 950 (5th Cir. 2011). Thus, Plaintiff's claims against Sheriff Skinner in his individual capacity should be dismissed.

> b. *Qualified Immunity*

Qualified immunity is a defense available to government officials in their individual capacities. *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994). In considering whether a defendant is entitled to qualified immunity, courts must first determine "whether [the plaintiff's] complaint contains enough facts showing that [his] constitutional rights were violated, or whether the facts pled amount to a constitutional violation." *Martinez*, 846 F. App'x at 241. Second, if the plaintiff has stated a claim, courts must consider whether the right was clearly established at the time of the violation. *See id.*; *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 863 (5th Cir. 2004).

Here, the Sheriff's Office Defendants are entitled to qualified immunity absent a showing by Plaintiff "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *See Mayfield v. Currie*, 976 F.3d

482, 486 (5th Cir. 2020) (quoting *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013)).[5] A district court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Notably, and as the Fifth Circuit has explained, a "defendant's conduct cannot constitute a violation of clearly established law if, on the plaintiff's version of the facts, there is no violation at all." *Johnson v. Johnson*, 385 F.3d 503, 525 (5th Cir. 2004). "This court must thus initially ask whether the challenged conduct actually presents a violation of federal law [or the Constitution]." *Bone*, No. 4:21-CV-201, 2022 WL 912100, at *7 (quoting *Douglas v. Herrin*, No. SA-11-CV-766-XR, 2012 WL 176223, at *3 (W.D. Tex. Jan. 20, 2012)).

Turning to the first prong of the qualified immunity analysis, the Sheriff's Office Defendants assert that Plaintiff has failed to plead facts showing they violated Plaintiff's constitutional rights.[6]

Pretrial detainees have constitutional rights that flow from the procedural and substantive due process guarantees of the Fourteenth Amendment. *Martinez*, 846 F. App'x at 241; *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996)). A Fourteenth Amendment due process

---

[5] If the defendant raises qualified immunity as a defense, the burden shifts to the plaintiff to plead specific facts to show that qualified immunity does not apply. *Terwilliger v. Reyna*, 4 F.4th 270, 284 (5th Cir. 2021) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)).

[6] In his Complaint, Plaintiff asserts that his Eighth Amendments rights were violated. However, state court records indicate that Plaintiff was convicted on May 31, 2022. Thus, it appears that Plaintiff was a pretrial detainee, and not a convicted prisoner, at the time of his allegations. The Eighth Amendment ensures the safety of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees. *Hurdsman v. Pokluda*, No. A-17-CV-290-RP, 2020 WL 156598, at *10 (W.D. Tex. Jan. 13, 2020) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc)). Evaluation of Plaintiff's claims under the Eighth Amendment and the Fourteenth Amendment are substantially similar. The "Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners." *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019). As such, the Court's analysis would not meaningfully change as to the specific grounds for dismissal raised by the Sheriff's Office Defendants. *See Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) (citing *Hare*, 74 F.3d at 645, 647) ("When the alleged unconstitutional conduct involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights, regardless of whether the individual is a pretrial detainee or state inmate.").

challenge by a pretrial detainee "may be brought under two alternative theories," challenging either (1) an "episodic act or omission" or (2) a "condition of confinement." *Est. of Henson v. Wichita Cnty.*, 795 F.3d 456, 462 (5th Cir. 2015). "At the outset," a district court must determine whether a detainee's due process claim should be categorized as an episodic-act-or-omission claim or a condition-of-confinement claim. *Mitchell v. Denton Cnty.*, No. 4:18-CV-399-ALM-KPJ, 2022 WL 989392, at *7 (E.D. Tex. Feb. 28, 2022), *report and recommendation adopted*, No. 4:18-CV-399-ALM-KPJ, 2022 WL 987819 (E.D. Tex. Mar. 31, 2022); *Morel v. Lopinto*, No. 19-12422, 2022 WL 110496, at *4 (E.D. La. Jan. 12, 2022). An episodic-act-or-omission claim "faults specific jail officials for their acts or omissions" causing the complained-of harm. *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 1997). In such claims, "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).

By contrast, a conditions-of-confinement challenge is a challenge to the "general conditions, practices, rules, or restrictions of pretrial confinement." *Est. of Henson*, 795 F.3d at 463. Such claims may challenge, for example, the number of bunks per cell, mail privileges, and disciplinary segregation. *Id.* (citing *Shepherd*, 591 F.3d at 452). "In many jail condition cases, the conditions themselves constitute the harm. This is true, for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions." *Scott*, 114 F.3d at 53. As one district court has explained, "Whereas conditions-of-confinement claims challenge the constitutionality of pervasive, systemic policies and customs themselves; episodic-acts-or-omissions claims challenge the constitutionality of the way in which a policy or custom was

applied by a jail official in a particular instance." *Feliz*, 441 F. Supp. 3d at 497 (citing *Est. of Henson*, 795 F. 3d at 466-67).

As best the Court can tell, Plaintiff is alleging that he was "unjustly" confined to a cell or "locked down" and separated from other inmates on several occasions for durations lasting between two days to two weeks, and that during those times he was allowed out of his cell for only one hour (or less) per day and denied "privileges such as: phone, shower, outside recreation." (Dkt. #1, p. 4; Dkt. #1-1, p. 1). Plaintiff identifies Officer Atkins and Officer Cole as personally involved in the alleged lockdowns and confinement. (Dkt. #1-1, p. 1). It appears from Plaintiff's Complaint that Officer Atkins placed Plaintiff in some type of non-punitive segregation for approximately two weeks because Plaintiff was receiving threats from other inmates. (Dkt. #1-1, p. 1, ¶ 1). Plaintiff does not allege that Officer Atkins placed him in segregation or lockdown for any disciplinary or punitive reason. Additionally, the grievance response reflects that any lockdown administered by Officer Cole was not for disciplinary infractions, and that any lockdown in November of 2021 based on Covid protocol would have allowed Plaintiff to be out of his cell for one hour per day. (Dkt. #1-1, p. 4).

"Pretrial detainees, unlike convicts, have a liberty interest in avoiding punishment—an interest that derives from the Constitution itself." *Welsh v. Lubbock Cnty.*, No. 5:19-cv-255, 2022 WL 278550, at *3 (N.D. Tex. Jan. 31, 2022) (quoting *Surprenant v. Rivas*, 424 F.3d 5, 17 (1st Cir. 2005)); *accord Mitchell*, No. 4:18-CV-399-ALM-KPJ, 2022 WL 989392, at *8. However, not every restriction in pretrial detention "amounts to 'punishment' in the constitutional sense." *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced

had he been released while awaiting trial." *Id.* at 540. The Fifth Circuit has repeatedly held that jailers should be afforded "the widest possible deference" in classifying detainees, as such deference is necessary "to maintain security and preserve internal order." *Perez v. Anderson*, 350 F. App'x 959, 962 (5th Cir. 2009) (quoting *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008)). "Absent extraordinary circumstances," administrative segregation "will never be a ground for a constitutional claim[.]" *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996); *see also Wilkerson v. Stalder*, 329 F.3d 431, 433, 436 (5th Cir. 2013) (remanding case to district court, as serving thirty years in lockdown might qualify as an extraordinary circumstance).

Here, to the extent Officer Atkins and Officer Cole placed Plaintiff in administrative segregation or in an isolation cell for his protection and for the penological concerns of jail safety, Plaintiff is not entitled to the inference that (1) he had a liberty interest in residing among the jail's general population, and (2) the time he spent in the isolation cell and/or the time spent in non-punitive administrative segregation violated the Constitution. *Hogan v. Bexar Cnty.*, No. SA-20-cv-652, 2021 WL 4037597, at *5 (W.D. Tex. Sept. 3, 2021) ("Where a pretrial detainee has been placed in administrative segregation out of concerns for his safety, any alleged injuries from this condition of confinement cannot be grounds for a constitutional claim, as the condition is not punitive but rather has a valid penological purpose."). Thus, Plaintiff has not pled a sufficient episodic-act-or-omission claim based on his housing placement.

Plaintiff also alleges that he was denied showers and outside recreation and phone time during periods of lockdown. (Dkt. #1, p. 4). "[C]omplaints that essentially allege that prison officials have interfered with a detainee's desire to live more comfortably . . . do not allege a constitutional violation and are properly dismissed as frivolous." *McGarrah v. Williams*, No. 3:14-CV-1119-M, 2014 WL 4696015, at *2 (N.D. Tex. Sept. 18, 2014) (citing *Joseph v. Barthelemy*,

95 F.3d 53, 1996 WL 460003, at *2 (5th Cir. July 30, 1996) (table decision)). "[W]hile the Constitution requires that prison officials not deprive inmates of the minimal civilized measure of life's necessities, including basic elements of hygiene and reasonable opportunities for exercise, the restriction placed on plaintiff while in confinement, i.e., limited visits, phone privileges, showers, and out of cell recreation, did not violate plaintiff's constitutional rights." *Williams v. Bartel*, No. 2:05-CV-0021, 2007 WL 2156575, at *2 (W.D. La. June 18, 2007).

Here, Plaintiff has failed to state a claim based on denial of outside recreation time because "[n]o constitutional right exists for a particular quantity of recreation time." *Welsh v. Lubbock Cnty.*, No. 5:19-CV-255-BQ, 2020 WL 13016955, at *9 (N.D. Tex. Sept. 30, 2020), *report and recommendation adopted*, No. 5:19-CV-00255-H, 2022 WL 278550 (N.D. Tex. Jan. 31, 2022); *see also Smith v. Cockrell*, No. 2:02-CV-0305, 2003 WL 22076476, at *3 (N.D. Tex. May 1, 2003) (dismissing as frivolous the plaintiff's claim that "he has a right to a certain amount of 'dayroom recreation time'"); *see also White v. Simpson*, No. 3-04-CV-0728-D, 2004 WL 2049306, at *4 (N.D. Tex. Sept. 13, 2004) (finding no constitutional violation where the plaintiff "was denied access to the recreation yard" during the first six weeks of his incarceration and thereafter "received only 15 to 30 minutes of recreation per day instead of two hours as mandated by TDCJ policy"). Plaintiff has likewise failed to state a claim based on denial of phone time because there is no constitutional right to telephone access. *See Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996) (pretrial detainee's denial of telephone access did not "give rise to a constitutional claim"). Furthermore, Plaintiff has failed to allege facts showing that any denial of a shower amounted to a constitutional violation. *See Alexander v. Hamilton*, No. 14-CA-654, 2015 WL 339730, at *4 (W.D. Tex. 2015) (no constitutional violation occurred where pre-trial detainee was denied a shower for five days); *Hamilton*, 74 F.3d at 106 (depriving pre-trial detainee of a shower for three

days, as well as denying sheets, telephone access, visitation, and recreation, did not constitute punishment). Finally, Plaintiff has failed to state a claim based on any COVID-19 lockdown. *See Garcia v. Lumpkin*, 2022 WL 18491899, at *3 (E.D. Tex. Dec. 5, 2022) (finding the plaintiff's COVID-19 lockdown claim did not constitute cruel and unusual punishment under the Eighth Amendment "or an atypical and significant hardship" under the Fourteenth Amendment).

As Plaintiff has failed to allege facts amounting to a constitutional violation, the Sheriff's Office Defendants are entitled to qualified immunity.

### 3. Leave to Amend

Generally, a *pro se* plaintiff should be allowed to amend his complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Although leave to amend under Rule 15(a) is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case." *Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 821 (5th Cir. 2020) (citing *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)). A district court may consider the following factors in deciding whether to grant leave to amend: undue delay, bad faith or dilatory motive on the plaintiff's part, repeated failures to cure deficiencies by previous amendments allowed, undue prejudice to the opposing party, and futility of the amendment. *Id.*

Here, Plaintiff has provided no indication that he would be able to cure the pleading deficiencies identified herein if he were allowed to amend his Complaint. Moreover, when the plaintiff makes no attempt to amend his complaint in response to the defendant's challenge pursuant to Rule 12(b)(6), dismissal is proper when the plaintiff's allegations fail to state a claim for which relief can be granted. *See Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010); *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997). Under these

circumstances, the Court finds granting Plaintiff leave to amend would be futile, would unnecessarily delay these proceedings, and would prejudice the Sheriff's Office Defendants, who have already filed a motion to dismiss and would likely file a second motion to dismiss if an amended complaint was filed.

## C.  Strike under 28 U.S.C. § 1915(g)

Under the PLRA, an inmate may not file any lawsuit or appeal *in forma pauperis* if he has three or more lawsuits or appeals previously dismissed as "frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The statutory provision was designed to stop abusive litigious practices employed by inmates.

Because the Court is recommending dismissal of Plaintiff's claims in this case for failure to state a claim upon which relief may be granted, it is further recommended that Plaintiff be advised that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915, and that should he accumulate three strikes, he may be denied *in forma pauperis* status and be required to pay the full filing fee when filing additional civil actions or appeals unless he demonstrates that he is in imminent danger of serious physical injury.

## IV.  RECOMMENDATION

For the reasons set forth above, the Court recommends the Detention Facility's Motion (Dkt. #22) and the Sheriff's Office Defendants' Motion (Dkt. #23) be **GRANTED** and Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE**. The Court further recommends this dismissal be counted as a strike pursuant to 28 U.S.C. § 1915.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 1st day of June, 2023.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE